UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

JOSE MATAMOROS,

    Petitioner,

    v.                                                    Case No. 08-C-0704

GREGORY GRAMS,

    Respondent.

---

ORDER DISMISSING WITHOUT PREJUDICE ANY § 2255 CLAIMS
AND DENYING § 2241 PETITION

Jose Matamoros filed a petition under 28 U.S.C. §§ 2241 and 2255, asserting that a federal detainer lodged against him must be invalidated. The detainer relates to a parole violation warrant issued against him for criminal conduct on September 9, 2005. Matamoros contends that his parole term relating to a 1983 federal conviction was extended improperly after it had expired on August 3, 2005, and that he was not properly notified that he remained on parole at the time of his September 9, 2005, crime. Moreover, he contends, the U.S. Parole Commission has deferred any hearing on the alleged parole violation improperly. Thus, he argues, the government cannot constitutionally maintain the warrant and detainer against him.

The court appointed counsel for Matamoros to help unravel the events relating to his thirty-year-old conviction under law that has long-since been modified.

PROCEDURAL HISTORY

Review of the procedural history of this case is a necessity. The following chronology is gleaned from Matamoros's petition (filed pro se), the response of the United

States, and Matamoros's traverse (filed by counsel), all of the exhibits attached to those documents, and additional exhibits submitted by Matamoros (pro se). Documents attached to the government's response are certified to be true copies of documents found in Matamoros's file at the U.S. Parole Commission.

On January 12, 1983, Matamoros was sentenced in the U.S. District Court for the Eastern District of Louisiana in case CR 82-356-I upon conviction on two drug counts involving cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a) and 846, and 18 U.S.C. § 2. He was sentenced to two consecutive five-year terms of imprisonment plus a three-year consecutive term of "special parole." (Gov't's Resp. Ex. A.) The indictment indicates that the crimes occurred in September 1982. (Suppl. Exs. (Doc. 3) Ex. 8.)

Under the sentencing scheme in effect at that time, Matamoros was eligible for parole from his imprisonment. The U.S. Parole Commission paroled Matamoros as of January 7, 1987, when he had 2072 days remaining to be served. (Gov't's Resp. Ex. B.) The Certificate of Parole issued in December 1986 indicated that parole would run until September 9, 1992. (*Id.*)[1]

The U.S. Parole Commission issued a violation warrant on July 13, 1990, for other violations, including unauthorized possession of a gun by a felon; recklessly endangering safety by beating an individual with a pistol; and unauthorized possession of a long-bladed knife, on various dates in early July 1990. (*Id.* Ex. D.) The violations occurred in Madison, Wisconsin. (*Id.*) In proceedings arising from the same conduct, Matamoros was

---

[1]It appears that although paroled on January 7, 1987, Matamoros remained in custody on an immigration detainer until July 7, 1989, when the immigration detainer was lifted. (*See* Gov't's Resp. Ex. C.) Although Matamoros complains that he was in custody far longer than his January 12, 1983 sentence required, he appears to be including this immigration-related custody in his calculation. No one suggests in this case that the immigration custody was improper.

sentenced on May 28, 1991, by the Dane County Circuit Court to an aggregate term of eleven years of imprisonment (with 315 days of credit) for possession of a firearm by a felon, carrying a concealed weapon, and delivery of cocaine. (*Id.* Exs. D, E.) Apparently, Matamoros was paroled by Wisconsin authorities on June 15, 1995, as the U.S. Marshal Service arrested him on that date from Fox Lake Correctional Institution (a Wisconsin state facility) based on the July 13, 1990 warrant. (*Id.* Ex. F.)

In a document dated September 13, 1995, the U.S. Parole Commission revoked Matamoros's parole based on the Madison, Wisconsin incidents and Dane County convictions. (*Id.* Ex. G.) The Commission decided that none of the time Matamoros had spent on parole would be credited. (*Id.*)

The U.S. Parole Commission again paroled Matamoros on October 31, 1995, less than two months after issuing the notice of revocation. (*Id.* Exs. G, H.) According to the Certificate of Re-Parole and other Commission paperwork, as of the date of re-parole Matamoros had 1933 days remaining to be served, taking his parole term to February 14, 2001. (*Id.* Exs. H, I.)

On April 13, 2000, approximately four and a half years after Matamoros was paroled and just ten months before parole was set to expire, the Commission issued another violation warrant, based on Matamoros's arrest on March 25, 2000, by Greenfield, Wisconsin police, for possession of cocaine and marijuana. (*Id.* Ex. I.) A November 2, 2000, Notice of Action indicates that Matamoros's parole was revoked based on the violation and a related conviction in Milwaukee County Circuit Court. (*Id.* Ex. J.) Again, the Commission found that none of the time spent on parole would be credited. (*Id.*) It

appears that as of October 11, 2000, Matamoros had been in federal custody for approximately six months. (*Id.*)

The Commission paroled Matamoros once more, on December 13, 2000. (*Id.* Ex. K.) His Certificate of Parole (Re-Parole) indicated that parole would continue through August 3, 2005. (*Id.*) Matamoros was not revoked before that date.

On August 3, 2005, U.S. Probation Officer Daniel Savasta of the Eastern District of Wisconsin prepared a notice and letter informing Matamoros that his federal parole supervision term had expired. In the letter Savasta asked Matamoros to complete an exit survey and told him "Congratulations and good luck!" (*Id.* Ex. L.) The document titled "Notice of Discharge" was written on letterhead of the U.S. Probation Office of the Eastern District of Wisconsin and stated: "Inasmuch as you have completed the terms and conditions of your parole on the date shown above, you are hereby discharged from supervision of this office." (Pet. Ex. 3.)

However, what had expired on August 3, 2005, was Matamoros's parole term from his ten-year sentence of incarceration, i.e., the two five-year consecutive sentences imposed in January 1983. That ten-year sentence was to be followed by the three-year special parole term. (*See* Gov't's Resp. Ex. A.) The special parole term had escaped Savasta's and the Commission's notice on August 3, 2005. As Savasta states in an affidavit:

> The special parole term had escaped my attention (and that of the Commission) earlier. I believe this is because, while special parole is clearly referenced in the 1983 judgment of conviction in CR82-356-I, it is not mentioned in the more recent documents in Matamoros's file. I relied upon these more recent documents when drafting my letter of August 3, 2005.

4

(*Id.* Ex. Savasta Aff. ¶ 8.)

On September 9, 2005, the Commission issued a document titled "CERTIFICATE OF SPECIAL PAROLE, nunc pro tunc." (*Id.* Ex. M.) The certificate reads in pertinent part:

> It having been made to appear to the United States Parole Commission that Matamoros, Jose, Register No. 17373-034, is subject to a special parole term commencing August 4, 2005, in accordance with the Drug Abuse Prevention and Control Act, 21 U.S.C. 801, et. seq., with a total of 3 years remaining to be served. Upon release, the above-named person is to remain under the jurisdiction of the United States Parole Commission and will be under the conditions set forth on the attached Conditions of Release form until midnight August 3, 2008, and that said releasee is to remain within the limits of the Eastern District of Wisconsin.
>
> Given under the hands and the seal of the United States Parole Commission on September 9, 2005.

(*Id.*) A notation at the bottom of the certificate indicates that it was "Queued" on September 9, 2005, at 2:34 p.m., noting the names of the probation office in the Eastern District of Wisconsin and the Bureau of Prisons in Oklahoma. (*Id.*)

A record of an incoming telephone call at the U.S. Parole Commission indicates that Savasta contacted the Commission on September 9, 2005, at about 2:37 p.m., inquiring about an "SPT," presumably a special parole term. (*Id.* Ex. T.) Case Analyst Lynne Jenkins wrote that she prepared and faxed the "SPT cert." (*Id.*)

Savasta swears in an affidavit that he called Matamoros and told him about the existence of the special parole term:

> [W]hile my log of contacts with Matamoros does not reflect this, I distinctly recall speaking with Matamoros by telephone (at a cellular telephone number provided on his business card) *during business hours on September 9, 2005* to inform him of the special parole term and to request that he come in to the office. He acknowledged understanding that he was subject to a special parole term.

(*Id.* Ex. Savasta Aff. ¶ 8.)

At approximately 9:00 p.m. on that same day, September 9, 2005, Matamoros participated in an armed robbery, false imprisonment, and battery. (*See id.* Ex. N.) The victims were bound and blindfolded and one victim was hit in the head with a gun and burned repeatedly with a cigarette. (*See id.*) Matamoros was arrested on the scene, in possession of jewelry and cash belonging to the victims, and he confessed his involvement to police. (*See id.*)

On September 20, 2005, the Commission issued a warrant for Matamoros's arrest for violation of the conditions of his release related to the September 9, 2005, illegal conduct. (*Id.* Ex. N.) On or about April 24, 2006, Matamoros was convicted in Milwaukee County Circuit Court of armed robbery, false imprisonment, and two counts of substantial battery, as a party to a crime, relating to the September 9, 2005 conduct; he was sentenced to prison for fifteen years followed by five years of extended supervision. (*Id.* Ex. O.)

On October 5, 2006, the U.S. Marshal issued a detainer[2] based on the outstanding federal parole violation warrant from September 20, 2005. The detainer to Columbia Correctional Institution asked the facility to notify the Marshal prior to Matamoros's release from custody so the Marshal may take custody of him.[3] In addition, it asked the facility to

---

[2]"A detainer in this context is an internal administrative mechanism to assure that an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a parole violation has had an opportunity to act . . . by taking the inmate into custody or by making a parole revocation determination." *Moody v. Daggett*, 429 U.S. 78, 81 n.2 (1976). When two jurisdictions are involved, such as a federal detainer placed against an inmate in a state institution, a detainer "is a matter of comity." *Id.*

[3]This detainer indicates that it supersedes detainers dated September 26, 2005, and June 30, 2006, to the Milwaukee County Criminal Justice Facility and Columbia County Jail, respectively. (*Id.* Ex. P.)

read or show Matamoros a notice of the detainer and the Commission's warrant. A note indicates that the notice was read to or by Matamoros on October 10, 2006. (*Id.* Ex. P.)

In May 2009, the U.S. Parole Commission conducted a disposition review of the detainer and decided to let the detainer stand. (*Id.* Exs. Q, S.) Matamoros's attorney had asked the Commission to withdraw the detainer, but the Commissioner disagreed. (*Id.* Exs. Q, S.) A Notice of Action dated May 19, 2009, indicated that the detainer would stand and the decision was not appealable. (*Id.* Ex. R.)

Matamoros filed this case, contending that the reinstatement of parole, issuance of the parole violation warrant, and lodging of the detainer were illegal and he has suffered repercussions as result. He could not be released on bail because of the warrant and detainer; the District Attorney argued that Matamoros committed the crimes while on supervision, justifying a harsher sentence; the Milwaukee County trial court accepted that argument and sentenced Matamoros more harshly than otherwise would have occurred; the detainer is considered by the Wisconsin Department of Corrections regarding Matamoros's custody rating, resulting in Matamoros being ineligible for medium custody and held in maximum custody instead; and the violation warrant is considered regarding institution jobs, affecting his employment opportunities in prison. (Pet. at 8.)

## DISCUSSION

A.   Section 2255 or Section 2241 or Both?

The first item to discuss is what this case is *not*. This case cannot include a claim under 28 U.S.C. § 2255. A § 2255 motion attacks the sentence itself and must be brought in the court where the sentence was imposed. § 2255(a). Matamoros's federal sentence

7

was imposed by a district judge in the Eastern District of Louisiana. Thus, Matamoros cannot bring any claims under § 2255 in this court. Moreover, he does not attack the sentence imposed, but rather how that sentence is being handled by the U.S. Parole Commission.

The United States admits that Matamoros can bring his claims under 28 U.S.C. § 2241, as the federal detainer serves as "custody" for purposes of § 2241. In addition, the United States concedes venue in this district. (Gov't's Resp. at 5.) Thus, this court will address Matamoros's claims under § 2241. Any claims under § 2255 will be dismissed without prejudice.

B.    Was Matamoros Validly on Special Parole at the Time of His New Crimes?

In 1983 Matamoros was convicted under 21 U.S.C. § 841(a)(1) for 1982 offenses involving cocaine hydrochloride. (Gov't's Resp. Ex. A.) At the time of his crimes and conviction, the penalty for his crimes included a term of imprisonment, a fine, or both. *See, e.g.*, 21 U.S.C. § 841(b)(1)(A) (1982). In addition, "[a]ny sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment . . . ." *Id.* (The length of imprisonment, length of special parole term, and amount of fine varied based on the schedule classification of the controlled substance and whether the defendant had a prior controlled substance conviction. *See* § 841(b)(1)-(2) (1982).) Section 841(c) stated expressly that a special parole term "shall be in addition to, and not in lieu of, any other parole provided for by law" and that the special parole term could be revoked if its terms and conditions were violated. § 841(c) (1982).

8

Current federal regulations continue to provide guidance on how special parole terms work. They describe the special parole term as "an additional period of supervision which commences upon completion of any period on parole or mandatory release supervision from the regular sentence; or if the prisoner is released without supervision, commences upon such release." 28 C.F.R. § 2.57(a) (2011). They indicate that "[a]t the time of release under the regular sentence, whether under full term expiration or under a mandatory release certificate or a parole certificate, a separate Special Parole Term certificate will be issued to the prisoner by the Bureau of Prisons." 28 C.F.R. § 2.57(b) (2011).[4]

Generally, the jurisdiction of the U.S. Parole Commission over a parolee terminates "no later than the date of the expiration of the maximum term or terms for which he was sentenced." 18 U.S.C. § 4210(b) (1982); 28 C.F.R. § 2.39(a) (2011). Upon termination of its jurisdiction, the Commission "shall issue a certificate of discharge to such parolee." 18 U.S.C. § 4210(f) (1982); 28 C.F.R. § 2.39(c) (2011).

One of Matamoros's arguments is that the Commission violated his due process rights by placing him on special parole *after* he committed the crimes on September 9, 2005. That argument fails based on the facts. Special parole was discussed by someone at the Commission and Parole Officer Savasta mid-afternoon on September 9, and the Certificate of Special Parole appears to have been produced and faxed to Savasta and the BOP mid-afternoon that day as well. Matamoros provides no evidence contradicting this

---

[4]No party suggests that over the years the regulations have changed in any way pertinent to the present proceedings.

9

proof that the certificate was issued by the Commission prior to his September 9, 2005, criminal activity.

Matamoros also argues that even if the certificate issued earlier on the day of his crime on September 9, 2005, he received no notice of the Certificate of Special Parole that day. He contends that his special parole term did not start until he received the certificate, such that holding him in violation for crimes occurring before he received the certificate or other notice violates his due process rights. But this argument fails as well, even without an evidentiary hearing to determine whether Savasta and Matamoros had a telephone conversation about special parole on the afternoon of September 9, 2005. Title 21 U.S.C. § 841(b) (1982) mandated imposition of the special parole term. Nothing in the statute suggests that any lapse of time occurs between the end of the sentence of imprisonment (even if the prisoner is paroled from that imprisonment) and the start of the special parole term. The regulations confirm that the special parole term starts immediately, "commenc[ing] upon completion of any period on parole or mandatory release supervision from the regular sentence." 28 C.F.R. § 2.57(a) (2011); *cf. United States v. Bridges*, 760 F.2d 151, 155 (7th Cir. 1985) (stating that special parole "follows the completion of the primary sentence, including any ordinary parole"); *Bunker v. Wise*, 550 F.2d 1155, 1158 (9th Cir. 1977) ("[T]he mandatory [special parole] term takes effect after the expiration of normal parole or after mandatory release."); *Chilcote v. Bureau of Prisons*, 874 F. Supp. 229, (N.D. Ind. 1994) (stating that Chilcote's "regular parole expired on May 2, 1989, and he began serving his special parole term on that date").

Although a certificate of special parole is supposed to issue at the end of the initial term, and in Matamoros's case should have issued on or before August 3, 2005, neither

the statute nor the regulations support any reading that the start of the special parole term hinges on issuance of the certificate. Section 28 C.F.R. § 2.57(b) (2011) states that a certificate "will be issued" at the time of release under the regular sentence; it does not imply that a certificate must be issued for the term to commence; "will be issued" suggests that issuance before conclusion of the regular sentence is not required. This reading is supported by the contrast with regulations about regular parole from incarceration: "A grant of parole shall not be deemed to be operative until a certificate of parole has been delivered to the prisoner." 28 C.F.R. § 2.29(a) (2011). No such language exists in the special parole term regulation, and the difference is understandable. The start of parole from incarceration corresponds with release from custody of the BOP and justifies the issuance of a certificate before such release occurs, whereas the start of a special parole term begins automatically and may follow parole from the regular sentence, with no change in custody level. "Special parole differs from traditional parole," *Russie v. U.S. Dep't of Justice*, 708 F.2d 1445,1447 (9th Cir. 1983), in this way. It "operates under terms very different from those applied to traditional kinds of parole." *Id.* at 1448. In *Chilcote*, a district court within this circuit found that the regulation stating that a certificate of reparole to special parole "is issued" by the Commission

> is clearly a procedural guideline . . . and was not meant to confer a substantive right on behalf of parolees. The Regulation merely informs the Bureau of Prisons what type of certificate "is" to be issued or "will" be issued and does not state that a particular type of certificate "*shall*" be issued.

874 F. Supp. at 231. In sum, by law the special parole term began immediately upon the expiration of the regular parole, whether or not a certificate issued.

11

Moreover, the jurisdiction of the Commission over a parolee generally terminates no later than the date of expiration of the maximum term for which the parolee was sentenced, and the commission shall issue a certificate of discharge. 18 U.S.C. § 4210(b), (f) (1982); 28 C.F.R. § 2.39(a), (c). It is unclear whether the Notice of Discharge issued by Savasta, of the U.S. Probation Office in the Eastern District of Wisconsin, may qualify as a certificate of discharge issued by the Commission; in other words, Savasta may not have been authorized to speak on behalf of the Commission, but only on behalf of the probation office in Milwaukee. But that question is immaterial. The Commission's jurisdiction over Matamoros by statute continued to the expiration of the entire sentence, including the special parole term. As the special parole term commenced immediately following the end of parole on the regular sentence on August 3, 2005, the Commission's jurisdiction continued. Savasta's Notice of Discharge cannot trump the statute and regulations; it applied at most to the parole on the regular sentence, not the special parole term. *See Russie*, 708 F.2d at 1448 (finding that a parole officer's Notice of Discharge issued at the scheduled expiration date of the special parole term did not end the Commission's authority over the parolee because the Commission had issued a valid parole violation warrant prior to the date the Notice of Discharge issued, which barred expiration of the special parole term sentence).

Moreover, Matamoros's judgment sets forth the special parole term, and presumably the district judge informed Matamoros of that special parole term at the sentencing hearing. Thus, as discussed more fully below, he was actually on notice that he had a special parole term to serve.

Finally, no constitutional concerns arise from the fact that the Commission issued a Certificate of Special Parole nunc pro tunc.[5] As discussed above, the special parole term began with or without the certificate. And even as to a certificate of parole from a regular sentence, which the regulations discussed above indicate must issue before regular parole is operative, at least one circuit court has found a nunc pro tunc order permissible. In *Durham v. U.S. Parole Commission*, No. 07-5669, 2009 WL 32709 (6th Cir. Jan. 6, 2009),[6] the Sixth Circuit declined to find error in a nunc pro tunc parole certificate that benefitted Durham by expediting service of a new federal sentence and allowed him to serve parole concurrently with the sentence on another conviction.

In sum, Matamoros was on special parole when he committed his crimes on September 9, 2005, whether or not he received verbal notice or a copy of the Certificate of Special Parole before that time. The Commission could validly issue the violation warrant on September 20, 2005, concerning Matamoros's illegal activity of September 9, 2005.

C. Did/Does the Commission's Delay in Conducting a Hearing or Disposition Review Constitute Any Constitutional Violation?

Matamoros contends that the continued detainer causes problems regarding his custody level and job opportunities in prison. But such effects are not constitutional issues, and the Commission's delay in conducting a hearing is not constitutionally impermissible.

---

[5] "Nunc pro tunc" comes from the Latin "now for then" and means "[h]aving retroactive legal effect." Black's Law Dictionary 1100 (8th ed. 2004). "Nunc pro tunc signifies . . . a thing [that] is done now, which shall have same legal force and effect as if done at time when it ought to have been done." Black's Law Dictionary 964 (5th ed. 1979).

[6] The case can be cited under Fed. R. App. P. 32.1(a) and Sixth Circuit Rule 28(f).

The statutes in effect at the time of Matamoros's crime and sentence and governing his parole provide for certain procedures for revocation of parole, including the opportunity for a preliminary hearing and then a revocation hearing within sixty days after the preliminary hearing. See 18 U.S.C. § 4214(a)(1) (1982). However, by the terms of the statute, those procedures apply once the alleged parole violator is "retaken" based on the violation warrant. *Id.*; 18 U.S.C. § 4213(a)(2) (1982). In addition, when a parolee has been convicted of a crime that serves as a basis for a violation warrant, the new conviction constitutes probable cause making a preliminary hearing unnecessary, and the parole revocation warrant may be placed against the person as a detainer. 18 U.S.C. § 4214(b)(1) (1982). The detainer is to be reviewed by the Commission within 180 days of its receipt of notice of the parolee's placement. *Id.* The Commission may conduct a "disposition review" and either let the detainer stand or withdraw the detainer. § 4214(b)(2). When a parolee with a detainer is retaken following another sentence, a revocation hearing must take place within ninety days. § 4214(c).

In *Moody v. Daggett*, 429 U.S. 78 (1976), the Supreme Court found no constitutional requirement for an immediate hearing on a parole violation warrant when the alleged parole violator is in custody on other charges and a detainer is lodged. Moody had committed two homicides while on parole from a federal sentence; he was convicted of manslaughter and second-degree murder and imprisoned for the homicides. The Board of Parole (later renamed the Parole Commission) issued a violator warrant but did not execute it, and the warrant was lodged as a detainer with the prison. Moody asked the Board to execute the warrant and conduct a hearing immediately, but the Board indicated

14

it would do so only upon Moody's release from his homicide sentences. *Id.* 80-81. Moody argued that he had a liberty interest in the conditions of his confinement, and that the detainer adversely affected his prison classification status. *Id.* at 85.

The issue was not whether a hearing would ever be conducted on the violation charges but whether the hearing had to occur immediately, and the Court answered "no." *Id.* at 85-86. Moody's confinement at the time derived from his homicide sentences rather than the parole violation warrant. *Id.* at 86. The Court found that no loss of liberty, which would trigger the need for a hearing, would occur until Moody's custody was pursuant to the warrant rather than the homicide sentences. *Id.* at 86-87. Moreover, the Court found no constitutional problem regarding the effect the detainer had on Moody's prison classification and qualification for institutional programs. *Id.* at 87-88 & n.9.

The Eighth Circuit followed *Moody* in *Hicks v. U.S. Board of Paroles & Pardons*, 550 F.2d 401 (8th Cir. 1977), finding that the Parole Board had no constitutional duty to conduct a parole violation hearing for an Iowa prisoner until she was taken into custody on the warrant at the end of her Iowa sentence:

> It is abundantly clear under *Moody* that (1) there was probable cause for issuance of the parole violator warrant and therefore there is no requirement for an immediate hearing; (2) the Board was free to defer a final decision on parole revocation until appellee was released by Iowa authorities; and (3) the Board could then execute the warrant, take appellee into custody immediately upon her release, and thereafter conduct the revocation hearing.

*Id.* at 403-04. And in *United States v. Williams*, 787 F.2d 1182 (7th Cir. 1986), the Seventh Circuit rejected a defendant's argument that federal authorities' delay in prosecuting and a district court's delay in conducting a hearing on a probation warrant violated the Sixth

Amendment right to a speedy trial. The appeals court cited *Moody* and found that Williams had made no showing that the delay of his hearing prejudiced him. *Id.* at 1184.

Under *Moody*, *Hicks*, and *Williams*, Matamoros's due process arguments about the delay in having a hearing on the charges in the violation warrant are unpersuasive. His Wisconsin conviction established probable cause such that no immediate hearing was required, and the Commission can constitutionally wait until the release from the state sentence before holding a final hearing.

Matamoros also contends that the Commission violated the statutes by not conducting his disposition review within 180 days of the lodging of the detainer. However, the statute provides no remedy for tardy action by the Commission. *See Rivera v. United States*, No. 92 C 6358, 1993 WL 257480, *2 (N.D. Ill. July 8, 1993) ("[Section 4214] is silent about the appropriate remedy when the Parole Commission fails to act within the statutory deadlines. Release of the parolee, however, would be too severe a remedy."), *aff'd,* No. 93-2787, 25 F.3d 1053 (7th Cir. May 20, 1994). In line with *Moody* the court sees no constitutional harm that justifies invalidation of the warrant and detainer. The Commission was free to defer a hearing and final decision on parole revocation until Matamoros's release by Wisconsin officials, regardless of whether the disposition review occurred within 180 days. Matamoros should receive his full hearing once retaken into federal custody pursuant to the warrant at the end of his state sentence.

D.     Is the Commission Estopped from Maintaining the Warrant and Detainer?

Next, Matamoros contends that the Commission should be estopped from acting on the warrant due to Savasta's issuance of the Notice of Discharge and the alleged lack

16

of actual notice by Matamoros of the issuance of the Certificate of Special Parole nunc pro tunc on September 9, 2005, before he committed his crimes.

Estoppel may apply where (1) the party to be estopped knows the facts; (2) that party intended that his conduct be acted upon or acted such that the party asserting estoppel had a right to believe he so intended; (3) the party asserting estoppel was ignorant of the facts; and (4) the party asserting estoppel reasonably relied on the other's conduct to his substantial injury. *Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir. 1982) (determining whether estoppel could apply against the U.S. Postal Service); *Johnson v. Williford*, 682 F.2d 868, 871 (9th Cir. 1982) (discussing estoppel against the U.S. Parole Commission).

Matamoros's estoppel argument fails regarding elements (3) and (4). Notwithstanding that over twenty-plus years elapsed between sentencing and Savasta's Notice of Discharge, Matamoros cannot establish ignorance of the facts. His judgment of conviction provided for ten years of incarceration plus three years of a special parole term. Matamoros had to have been present for sentencing, and his sentence had to have been explained to him by counsel and the court. (He has not had the conviction overturned for such failures, so this court must presume the conviction was constitutionally entered.) The judgment and sentencing hearing together, plus the statutes in effect at the time, put Matamoros on notice that he had a special parole term to serve immediately following his regular sentence of incarceration, whether or not he was paroled from that incarceration in the meantime. Moreover, Matamoros's certificates of parole and certificates of reparole prior to August 3, 2005, were titled as such rather than as certificates of special parole or of reparole to special parole. (*See* Gov't's Resp. Exs. B, E, K.) In addition, the number of

days remaining to be served, had he calculated the amounts shown on his certificates of parole or warrants or notices of action (*see* Exs. B, D, G, I), should have indicated that they could not have included an additional three years of time.

And Matamoros's reliance argument cannot be accepted. He asks the court to find that he reasonably relied on Savasta's Notice of Discharge when he committed serious new crimes the night of September 9, 2005. As the Ninth Circuit stated in finding that estoppel would not bar revocation on a warrant issued before a parole officer incorrectly sent out a notice of discharge, "[t]o apply estoppel in this case would subvert the policy of continuing supervision of drug offenders contained in 21 U.S.C. § 841 and the special parole provisions." *Russie*, 708 F.2d at 1448. Even accepting—at a stretch of credulity—that Matamoros considered the Notice of Discharge when contemplating whether he should participate in an armed robbery involving the binding and gagging of victims and burning one of the victims with a cigarette, he could not have *reasonably* relied on the notice as a basis for undertaking his illegal activity.

Moreover, this is not a case like *Johnson*, in which the Commission was estopped from returning Johnson to prison after the Commission's deliberate (though legally incorrect) decision to parole him after eight separate reviews of his file. *See* 682 F.2d at 871-72. Unlike the situation in *Johnson*, where the Commission took affirmative action to parole Johnson, Savasta's Notice of Discharge was not affirmative misconduct of the type that threatens to work a serious injustice such that estoppel would be justified. *See id.*; *Portmann*, 674 F.2d at 1167 (adopting Ninth Circuit's factors for estoppel against the

government, including that the government action must amount to affirmative misconduct, not mere negligence).

E.     Should the Court Order a Second Disposition Review?

Matamoros argues that at the least the court should order a second disposition review. However, as he has pointed out no constitutional violation regarding the warrant and detainer, and the only error (not reviewing Matamoros's detainer within 180 days) has already been followed by a disposition review, there is no meritorious or mandatory basis for a second disposition review.

## CONCLUSION

For these reasons,

IT IS ORDERED that any claim Matamoros presents under 28 U.S.C. § 2255 is dismissed without prejudice.

IT IS FURTHER ORDERED that Matamoros's claim under 28 U.S.C. § 2241 is denied on the merits and dismissed with prejudice.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE